The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, Arkansas 72-22-4025
Dear Senator Broadway:
I am writing in response to your request, on behalf of a constituent, for an opinion on two questions concerning the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -109 (Repl. 2002 and Supp. 2005). Specifically, you have enclosed a letter from your constituent detailing the following information and posing the following questions:
 1. Question No. 1 is in regards to how one is provided access to the records of 911 calls, which are mostly recorded on DVD or some type of computer disk. . . . The FOI Act says that a person should be granted access to these records. However, a person is not going to be allowed to use the 911 computer system in order to access that information, so it is almost mandatory that the 911 information being requested must be put on some type of cassette tapes or transcribed in order to have actual access to that information. [Your constituent] requested certain 911 phone calls from a certain agency, and that agency put that information on two separate cassette tapes. The agency then advised [your constituent] that . . . to be able to listen to those tapes, [he] I would have to pay $10.00 per tape, or a total of $20.00 to listen to both tapes. . . . [Your constituent] think[s] that the refusal to allow [him] just to listen to the tapes was a violation of the FOI Act, because it effectively denied [him] the actual access to the records, and [he] could have listened to the tapes right there without removing them from the agencies [sic] control. Therefore, [the] question [posed] is this: Did that actually deny [your constituent] access to the records . . . requested, or is that considered to be the appropriate answer to that FOI request simply making it purchasable . . . [?]
 2. [The] second question deals with the problem of someone who is "indigent" in some way, which possibly might mean someone who is incarcerated and is without means to work and make money, or is possibly someone who is just so poor that they cannot afford extra things like making FOI requests. . . . Therefore, [the] second question is this: Is there any way for persons who are so poor that they cannot afford to pay for that information to be able to obtain that information as an "indigent . . .?"
RESPONSE
It is my opinion that the answer to your first question may depend upon additional facts. If your constituent requested to inspect, rather than copy the records, charging a fee for listening to the cassette tapes likely was inconsistent with the FOIA. With regard to your second question, the FOIA states that "[c]opies may be furnished without charge or at a reduced charge if the custodian determines that the records have been requested primarily for noncommercial purposes and that waiver or reduction of the fee is in the public interest." Otherwise, the Arkansas Supreme Court has noted that "[i]ndigency alone does not entitle a petitioner to photocopying at public expense" and that "[a] petitioner [before the court] is not entitled to photocopying at public expense unless he demonstrates some compelling need for specific documentary evidence to support an allegation contained in a petition for postconviction relief."
Question 1 — Did [charging for listening to the tapes] . . .deny [your constituent] access to the records . . . requested, oris that considered to be the appropriate answer to that FOIrequest simply making it purchasable . . . [?]
Your constituent does not specify whether his FOIA request sought only to inspect the applicable records or also to receivecopies of the records. In this regard, the FOIA provides that "[a] citizen may make a request to the custodian to inspect, copy, or receive copies of public records." A.C.A. §25-19-105(a)(2)(A) (Supp. 2005) (emphasis added). If your constituent clearly stated his intention to inspect the records, rather than to copy them or receive copies of them, in my opinion the custodian should not have charged a fee for the inspection. Your constituent notes that "a person is not going to be allowed to use the 911 computer system in order to access that information, so it is almost mandatory that the 911 information being requested must be put on some type of cassette tapes or transcribed in order to have actual access to that information."[1] If the FOIA request your constituent made was for inspection only, I gather from this statement that the custodian had a security concern about allowing a citizen direct inspection of computerized databases and/or a concern that direct inspection of such records might impermissibly also allow access to information that is exempt from public disclosure.[2] In this regard the FOIA provides that: "[i]f it is necessary to separate exempt from nonexempt information in order to permit a citizen to inspect, copy, or obtain copies of public records,the custodian shall bear the cost of the separation." A.C.A. §25-19-105(f)(4) (Supp. 2005) (emphasis added). In my opinion, this provision dictates that a custodian not charge a fee for the segregation of exempt from non-exempt information. I am not certain whether this is exactly what transpired in your constituent's recitation of the facts, however. Additionally, in my opinion this same provision indicates that if the custodian is required to copy or otherwise transcribe information merely to permit inspection of the record, similarly, the citizen should not be charged in that instance. The FOIA authorizes the imposition of charges on citizens for "copies." No charge is contemplated or authorized for the mere inspection of public records.
Question 2 — Is there any way for persons who are so poor thatthey cannot afford to pay for that information to be able toobtain that information as an "indigent . . . ?"
It has been stated that "[a]lthough an entity subject to the FOIA . . . generally must provide copies of public records on request, it is not required to give them away." Watkins and Peltz, The Arkansas Freedom of Information Act (mm Press 4th ed. 2004) at 267-268. In this regard the FOIA provides that: "[c]opies may be furnished without charge or at a reduced charge if the custodian determines that the records have been requested primarily for noncommercial purposes and that waiver or reduction of the fee is in the public interest." A.C.A. §25-19-105(d)(3)(A)(iv) (Supp. 2005). This is the controlling provision as regards waiver of any copying charges and leaves waiver of the charges within the discretion of the custodian.
With regard to your mention of "incarcerated persons" the Arkansas Supreme Court has stated that: "Ark. Code Ann. §25-19-101 et seq, the Freedom of Information Act, does not require a court to provide free-of-charge a copy of material on file with the court. A petitioner is not entitled to photocopying at public expense unless he demonstrates some compelling need for specific documentary evidence to support an allegation contained in a petition for postconviction relief." Moore v. State,324 Ark. 453, 454, 921 S.W.2d 606 (1996). The court also noted that "[i]ndigency alone does not entitle a petitioner to photocopying at public expense. Id. at 454-455, citing Washington v.State, 270 Ark. 840, 606 S.W.2d 365 (1980).
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] My predecessors have opined and I agree, that recordings of 911 calls are generally subject to inspection and copying under the FOIA. See Ops. Att'y Gen. 2002-064; 1994-100 and 1990-236.
[2] If, on the other hand, your constituent was not clear in his initial request to merely inspect the records, the custodian may have simply misinterpreted the nature of the request and the incident may more nearly reflect a failure of communication rather than a violation of the FOIA.